United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 96-3669
No. 96-3886

_____

Eric Warner, a minor, by Linda Warner,   *
his mother,   *
  *
     Plaintiff - Appellee/   *
     Cross-Appellant,   *   Appeal from the United States
  *   District Court for the
     v.   *   District of Minnesota.
  *
Independent School District No. 625,   *
  *
     Defendant - Appellant/   *
     Cross-Appellee.   *

_____

Submitted: June 13, 1997
Filed: January 22, 1998

_____

Before LOKEN, REAVLEY,* and JOHN R. GIBSON, Circuit Judges.

_____

LOKEN, Circuit Judge.

After completing state administrative proceedings against Independent School District No. 625, which operates the St. Paul public schools, Linda Warner commenced this action to recover her attorneys' fees and costs as a prevailing party under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq*. ("IDEA"). The

_____

*The HONORABLE THOMAS M. REAVLEY, United States Circuit Judge for the Fifth Circuit, sitting by designation.

district court awarded Warner $63,501.45 in fees and $5,420.00 in costs. The School District appeals. Concluding that Warner is not a "prevailing party," we reverse.

## I.

Warner's son Eric suffers from an epileptic seizure disorder. For IDEA purposes, he is "handicapped" and entitled to "special education and related services." See 20 U.S.C. § 1400(a)(1). In early 1994, while Eric was enrolled in the St. Paul public schools in third grade, an assessment team classified him as "E/BD," eligible for special education services because of an emotional/behavioral disorder. However, the team did not classify him as eligible for services because of a speech or language disorder, or as other health impaired ("OHI"). The School District formulated an Individual Education Plan ("IEP") based upon the E/BD classification and, with Warner's approval, transferred Eric to a public school offering a specialized E/BD classroom. Eric's behavior and self-control improved that spring.

For the 1994-95 school year, Warner and the School District agreed to place Eric in another school offering an E/BD classroom. By mid-year, Warner was unhappy with Eric's public school education, largely over issues unrelated to his special education needs. She hired counsel and in January 1995 made numerous requests, including that Eric spend more of the school day "mainstreamed" in regular education classes. IDEA and Minnesota law declare a preference for educating handicapped children "in regular educational programs." 20 U.S.C. § 1414(a)(1)(C)(iv); see Minn. Stat. § 120.17, subd. 3a(4). Therefore, the School District reconvened Eric's IEP team to consider this issue.

In February, Warner removed Eric from public school and placed him in private school. In early March, the School District proposed a revised IEP for Eric's continued public school education. Warner objected, arguing that (i) Eric should not be classified E/BD handicapped; (ii) he should be classified OHI handicapped or as a traumatic brain injury student; (iii) he is entitled to speech and language therapy; (iv) the School

District transferred him to a more restrictive E/BD program contrary to the 1994 IEP; (v) the School District denied Eric a "free appropriate public education"; and therefore (vi) Warner must be reimbursed for Eric's private school expenses. The School District rejected those objections.

Following unsuccessful mediation, Warner requested the due process hearing mandated by IDEA and Minnesota law. See 20 U.S.C. § 1415(b)(2); MINN. STAT. § 120.17 subd. 3b(e). After that hearing, the state Hearing Officer concluded that the School District had properly classified Eric as E/BD handicapped, had provided Eric "an appropriately individualized program designed to provide educational benefit," and had placed Eric in an appropriate, partially mainstreamed education program in a physically safe environment. Therefore, the School District need not reimburse his private school expenses. However, the Hearing Officer ordered the School District to provide ten meetings of a "facilitated friendship group" to remedy its failure to keep Warner informed and to update Eric's IEP prior to March 1995.

Warner appealed this decision to a state Hearing Review Officer. See 20 U.S.C. § 1415(c); MINN. STAT. § 120.17 subd. 3b(g). In a lengthy decision, the Hearing Review Officer concluded that the School District had properly classified Eric as E/BD handicapped, adopted IEPs providing educational benefit, provided appropriate placement in a least restrictive, safe environment, and provided Eric a free appropriate public education. Therefore, the School District need not reimburse Warner for Eric's private school expenses. The Hearing Review Officer reversed the Hearing Officer's friendship group remedy because the School District's procedural irregularities had neither deprived Eric of educational benefit nor infringed Warner's right to participate in the IEP process. However, despite concluding that the School District had complied with IDEA, the Hearing Review Officer ordered the School District to amend Eric's IEP (i) to reflect Warner's choice of school, at her expense if private school is chosen; (ii) to permit Warner to elect the Battle Creek Eisenmenger school, with "appropriate nursing services," if she returns Eric to public school; (iii) to add OHI "as a secondary

handicapping condition"; and (iv) to conduct an independent educational assessment of Eric and reconvene the IEP team "to implement the results of the assessment."

Neither party appealed the Hearing Review Officer's decision, and it became final.  See 20 U.S.C. §1415(e)(1); MINN. STAT. § 120.17 subd. 3b(h).  Warner then commenced this action, seeking an award of $158,753.63 in attorneys' fees and $5,420 in expert witness fees as the prevailing party under IDEA.  See 20 U.S.C. § 1415(e)(4)(B).  The district court concluded that Warner "did not succeed . . . on the actual merits of the claim or the relief sought," that the School District "did comply with the IDEA," and that "the relief achieved is not mandated by IDEA."  Nevertheless, the court held that Warner was a prevailing party entitled to an award of attorneys' fees because the state administrative proceedings had "resulted in a material alteration of the legal relationship" between the parties.  Concluding that Warner's "$158,000 fee request is far in excess of a reasonable amount in light of the results obtained," the court reduced the request by sixty percent and awarded attorneys' fees of $63,501.45 plus expert witness fees of $5,420.[1]  The School District appeals.  Warner cross-appeals, seeking the full $158,000 requested.

## II.

It is settled in this and other circuits that a parent who has prevailed at the state administrative level may file a federal court action seeking a reasonable attorneys' fee award under IDEA.  See Johnson v. Bismarck Pub. Sch. Dist., 949 F.2d 1000, 1003 (8th Cir. 1991).  If the district court applied the correct legal standard in determining

---

[1]§ 1415(e)(4)(B) does not expressly authorize an award of expert witness fees.  The House Conference Committee Report said such fees could nonetheless be awarded, legislative history the Supreme Court has described as "an apparent effort to *depart* from ordinary meaning and to define a term of art."  West Va. Univ. Hosps., Inc. v. Casey, 499 U.S. 83, 91 n.5 (1991).  Given our disposition of this case, we need not address whether such an award is consistent with Casey.

-4-

a "prevailing party," which is of course a question of law, we review its award of attorneys' fees for abuse of discretion. See Yankton Sch. Dist. v. Schramm, 93 F.3d 1369, 1377 (8th Cir. 1996); Association for Retarded Citizens v. Schafer, 83 F.3d 1008, 1010 (8th Cir.), cert. denied, 117 S. Ct. 482 (1996). Decisions construing this term in the civil rights fee-award statute, 42 U.S.C. § 1988, "are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" Hensley v. Eckerhart, 461 U.S. 424, 433 n. 7 (1983).

In Hewitt v. Helms, 482 U.S. 755, 760 (1987), the Supreme Court declared that "plaintiff [must] receive at least some relief on the merits of his claim before he can be said to prevail" for purposes of § 1988. The Court confirmed that principle in Texas State Teachers Ass'n v. Garland Independent School District, 489 U.S. 782, 791 (1989), explaining that a prevailing party is "one who has succeeded on any significant claim affording it some of the relief sought." Most recently, in Farrar v. Hobby, 506 U.S. 103, 111 (1992), the Court reiterated that, "to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim."

Acknowledging that Warner did not succeed on the merits of her IDEA claim, the district court awarded attorneys' fees because the Hearing Review Officer's order "materially altered the legal relationship of the parties." That phrase indeed appears in the Supreme Court's prevailing party decisions. But it is the standard by which the Court measures how much relief on the merits is sufficient to justify at least a partial fee award; it is not a basis for awarding fees to a plaintiff who did not prevail on the merits of any claim under the fee-shifting statute in question. As the Court explained in Farrar, "plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." 506 U.S. at 111-12. Thus, the district court misapplied the governing prevailing party standard.

Turning to the facts of this case, the Hearing Review Officer expressly concluded that the School District did not violate IDEA. By appropriately classifying Eric's educational handicap, by developing IEPs that provided Eric education benefit, by placing Eric in appropriate school and classroom facilities, by affording Eric suitable mainstreaming opportunities, and by following procedures that allowed Warner to participate in the IEP process, the School District provided a free appropriate public education, and thereby met its substantive and procedural obligations under IDEA. See generally Board of Educ. v. Rowley, 458 U.S. 176, 187-204 (1982); Fort Zumwalt Sch. Dist. v. Clynes, 119 F.3d 607 (8th Cir. 1997). Whatever relief the Hearing Review Officer provided was not relief on the merits of Warner's IDEA claim.

The Hearing Review Officer's decision culminated state administrative proceedings. While those proceedings were an integral part of the IDEA regime,[2] the Minnesota hearing officers were charged with enforcing state law, including but not limited to the mandates of IDEA. See Minn. Stat. §§ 120.17, subd. 3a, subd. 3b(f)(3), subd. 3b(g)(3); Minn. R. 3525.4400. The Hearing Review Officer's authority to order the School District to amend Eric's IEP in the absence of an IDEA violation obviously derived from state law.[3] Minnesota could have authorized an award of attorneys' fees under state law, but it has not done so.

---

[2]The administrative proceedings satisfy Minnesota's obligation to provide due process hearings to parents if the State wishes to be eligible for federal assistance in educating handicapped children. See § 1415(a). A party aggrieved by the administrative decision may appeal to either federal or state court. See § 1415(e)(2).

[3]The Hearing Review Officer expressly based his order for an independent educational assessment on Minn. R. 3525.4000. He did not cite authority for ordering the additional amendments to Eric's IEP, but Minn. R. 3525.4400, subp. 3, seems to authorize such relief regardless of the School District's compliance with IDEA.

From the standpoint of a fee award under IDEA, this situation is most analogous to § 1988 cases in which a federal court renders judgment against plaintiff on the federal claims but grants relief under pendent state law claims. In such cases, other circuits "have uniformly held that a plaintiff who loses on the merits of its federal civil rights claim is not a 'prevailing party' for purposes of an award of attorneys' fees under 42 U.S.C. § 1988, even if it prevails on a related pendent state law claim." National Org. for Women v. Operation Rescue, 37 F.3d 646, 653-54 (D.C. Cir. 1994); see Mateyko v. Felix, 924 F.2d 824, 828 (9th Cir.), cert. denied, 502 U.S. 814 (1991), and cases cited.[4] We invoked this principle in denying attorneys' fees under § 1988 in Reel v. Arkansas Department of Correction, 672 F.2d 693, 697-98 (8th Cir. 1982). We noted that the legislative history to § 1988 carved an exception to the principle for cases in which relief is granted on a pendent non-federal claim to avoid reaching the federal constitutional claim. But that exception does not apply here because the Hearing Review Officer expressly rejected Warner's IDEA claims before granting relief under state law. Similarly, we have noted that a fee award may be appropriate under the catalyst theory if defendant provides a remedy to avoid litigating a federal claim. But Warner may not invoke that theory because "[a] party . . . who litigates to judgment and loses on all of his claims cannot be said to have 'prevailed'" as a catalyst. A.J. by L.B. v. Kierst, 56 F.3d 849, 865 (8th Cir. 1995).

For the foregoing reasons, we conclude that Warner is not entitled to an award of attorneys' fees and costs as a prevailing party under 20 U.S.C. § 1415(e)(4)(B) because she lost on the merits of her IDEA claims.

---

[4]We find support for these decisions in Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 285 (1993). After concluding that plaintiffs were not entitled to relief under the federal civil rights act, the Court denied plaintiffs attorneys' fees under § 1988 and *then* remanded for further consideration of pendent state law claims.

**III.**

Even if Warner were an IDEA prevailing party, we would substantially reduce the award of $63,500 in attorneys' fees. Prior to the administrative hearing, the School District made a settlement offer that included virtually all the relief later ordered by the Hearing Review Officer, plus $8,000 in compensation and attorneys' fees. At the subsequent hearing, Warner made it clear that she was dissatisfied with the School District for many reasons other than her IDEA complaints and intended to keep Eric in private school. In both her prehearing and posthearing briefs, reimbursement of private school expenses was the relief requested.

Viewed in this context, it is apparent that the relief ordered by the Hearing Review Officer did not provide immediate benefit. Rather, it was designed to encourage Warner to return Eric to public school by clarifying, in rather specific terms, how the School District would in that event meet its obligations under state law and the IDEA -- by performing a new educational assessment, as state law requires periodically, see MINN. R. 3525.2750, subpart 1; by amending Eric's IEP consistent with the new assessment; and by placing Eric at a public school facility of Warner's choosing that would provide him a free appropriate public education in terms of special education and related services. "Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement." Farrar, 506 U.S. at 111. Merely facilitating reentry into public school is not enough. Jodlowski v. Valley View Community Unit Sch. Dist. #365-U, 109 F.3d 1250, 1254 (7th Cir. 1997). While the Hearing Review Officer's relief was not completely voluntary, like that in Combs v. School Board, 15 F.3d 357, 360 (4th Cir. 1994), and Schmidt v. Special School District No. 1, 77 F.3d 1084, 1085 (8th Cir. 1996), it differed very little from what the School District voluntarily offered in settlement before the administrative hearing, which is highly relevant to the fee award issue. See § 1415(e)(4)(D), (F). In these circumstances, an award of $158,000, or even $63,500, is excessive. See Parents of

<u>Student W v. Puyallup Sch. Dist.</u>, 31 F.3d 1489, 1498 (9th Cir. 1994); <u>Johnson v. Bismarck Pub. Sch. Dist.</u>, 949 F.2d 1000, 1003-04.

## IV.

After reviewing the administrative record, we understand Warner's many frustrations with the School District that led her to place Eric in private school. Unfortunately, while her grievances were many, her IDEA claims were unsound. When Warner turned down the School District's IDEA-complying settlement offer and placed Eric in private school, she did so at her own financial risk, including the risk of paying her own attorneys' fees to pursue IDEA claims that ultimately failed. <u>See School Comm. v. Department of Educ.</u>, 471 U.S. 359, 373-74 (1985); <u>Salley v. St. Tammany Parish Sch. Bd.</u>, 57 F.3d 458, 468 (5th Cir. 1995). Accordingly, the judgment of the district court is reversed and the case remanded to the district court with instructions to enter judgment for the School District.

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent. I would affirm the judgment of the district court and award the fee as reduced in the district court order.

The court today bases its ruling primarily on the view that the Hearing Review Officer ordered a remedy "obviously derived from state law," and, looking to cases under 42 U.S.C.A. § 1988 (West Supp.1997), the district court could not award a fee where the plaintiff only prevailed on state law claims.

The court today improperly characterizes Warner's relief as grounded exclusively in state law, based on the court's misapprehension of the reach of the Individuals with Disabilities Education Act. The Act, 20 U.S.C. §§ 1400-1491o, sets out a program of federal assistance to state and local efforts to meet the educational

needs of disabled children, but it conditions that assistance on state compliance with certain procedures and safeguards. See 20 U.S.C. § 1412 (conditioning state eligibility for assistance on complying with numerous conditions).

While the district court was correct in referring to the independent educational assessment ordered by the Hearing Review Officer as authorized by Minnesota administrative rule, the state regulation must be viewed in its IDEA context. The IDEA specifically requires states to allow parents an opportunity to obtain an independent educational evaluation of the child. 20 U.S.C. § 1415(b)(1)(A); see 34 C.F.R. § 300.503 (1997). Federal regulations authorize an independent educational evaluation conducted by a qualified examiner not employed by the public agency responsible for the child's education, and subsection (d) specifically authorizes a Hearing Officer to request such an evaluation. 34 C.F.R. § 300.503(d). This is precisely what was ordered in this case.

Further, the provision of special education services at the private school, Tesseract, was, as stated by the district judge, consistent with the requirements of the IDEA. The Hearing Review Officer specifically ordered nursing services at the District School in accordance with state and federal law. The Hearing Review Officer also ordered that the IEP designate the student's primary disorder as E/BD (emotional/behavioral disorder), but that OHI (other health impairment) be added as a secondary handicapping condition.

While the district court and the Hearing Review Officer referred only to the Minnesota regulations, under the cooperative arrangement fostered by IDEA, the relief granted Eric sprang not only from the state statutes and regulations made to effectuate the federal programs, but was directly required by the federal statutes and regulations as well.

The court today looks at only one-half of the coin in looking to those portions of the Hearing Review Officer's opinion and the district court order stating that Warner had not succeeded in showing a violation of IDEA. To the contrary, relief authorized by both the IDEA and Minnesota statutes and regulations was the basis for the Hearing Review Officer's order.

The case before us is therefore distinguishable from <u>Reel v. Arkansas Dept. of Corrections</u>, 672 F.2d 693, 697-98 (8th Cir. 1982), in which the plaintiff lost his federal claim on the merits, but sought attorneys' fees because of success on pendent state common law claims.

The court recognizes that 20 U.S.C. § 1415(e)(2) provides that a party aggrieved by the findings and decisions of the state agency may bring an action in federal or state court. Sections 1415(e)(4)(B),(C) and (D) further provide that in any action brought under the subsection, the court may award reasonable attorneys' fees to the parents or guardian of a child or youth with a disability who is the prevailing party. The relief obtained by Warner was authorized by the fabric of federal and state statutes and regulations, and justifies the fee award.

Further, I believe that the court misreads <u>Farrar v. Hobby</u>, 506 U.S. 103, 111 (1992). The district court concluded, accurately I believe, that, in the respects we have discussed above, Warner "did succeed in altering the legal relationship between the parties by gaining an enforceable judgment that provides some relief to Eric" and thus met the threshold requirement for prevailing party status. This court, in contrast, acknowledges that material alteration of the legal relationship appears in the prevailing party decisions, but states it is a standard by which the court measures how much relief on the merits is sufficient to justify at least a partial fee award, but not the basis for awarding fees to a plaintiff who did not prevail on the merits of any claim under the fee shifting statute. The latter conclusion is simply contrary to the language in both <u>Farrar</u> and <u>Texas State Teachers Association v. Garland Independent School District</u>,

489 U.S. 782 (1989), that "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute."  Garland Indep. School Dist., 489 U.S. at 789, quoted in Farrar, 506 U.S. at 111.

The School District's behavior has been modified in ways that directly benefit Eric, as we have described above.  The district court rejected arguments that the relief obtained was gratuitous or de minimis.  I would award fees and affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.